UNITED STATES of America

v.

Luis GOMEZ–ORTIZ

No. C.R. 99–026L.

United States District Court,
D. Rhode Island.

Aug. 4, 1999.

Richard W. Rose, Assistant U.S. Attorney, Providence, RI, for Plaintiff.

David Cicilline, Providence, RI, for Defendant.

## DECISION AND ORDER

LAGUEUX, Chief Judge.

Luis Gomez–Ortiz pled guilty March 29, 1999 to unlawful reentry into the United States in violation of 8 U.S.C. § 1326. Gomez–Ortiz waived indictment and has accepted his guilt, but he and the government do not agree on how much time he should spend in prison before being deported back to Mexico.

The base offense level for unlawful reentry is 8 points, with an additional 16 if the defendant was previously deported after conviction for an "aggravated felony." *See* U.S.S.G. § 2L1.2. The First Circuit has noted that the increase "is nothing more than a criminal history adjustment, albeit a severe one, for prior offenses of a particular kind." *United States v. Restrepo–Aguilar,* 74 F.3d 361, 365 (1st Cir.1996).

Gomez–Ortiz was convicted of a misdemeanor drug offense in Massachusetts in 1994 and deported in 1995. The dispute is whether that conviction qualifies as an "aggravated felony" under the Sentencing Guidelines, which define that term by referring to other statutes. This is an issue of first impression in the First Circuit. In

fact, no reported case has been found anywhere on this precise issue.

In the end, the issue boils down to whether Gomez–Ortiz was convicted of a "felony" as defined by federal law. This Court holds that under the federal definition, a state misdemeanor can never be a felony. The First Circuit says that Congress respects state sovereignty and looks to the law of conviction, whether state or federal, to define felonies and misdemeanors.

Therefore, the base offense level for Gomez–Ortiz is 8 points.

### I. *Facts*

Gomez–Ortiz was convicted on September 8, 1994 in a Massachusetts state court of possession with intent to distribute marijuana and was sentenced to prison for one year. After his sentence was served, he was deported on May 3, 1995.[1]

Under Massachusetts law, first offense possession with intent to distribute marijuana is a misdemeanor. *See* M.G.L. 94C, § 32C(a) and M.G.L. 274 § 1. The parties agree that under federal law, possession with intent to distribute marijuana is a felony. *See* 21 U.S.C. § 841(a)-(b)(1)(A).

### II. *Analysis*

#### A. *Defining "Aggravated Felony"*

 Federal law, not state law, controls sentencing issues, including the definition of "aggravated felony." *See United States v. Cuevas,* 75 F.3d 778, 780 (1st Cir.1996); *United States v. Rodriguez,* 26 F.3d 4, 6 n. 3 (1st Cir.1994).

An "aggravated felony" is defined by the Sentencing Guidelines as "any illicit trafficking in any controlled substance (as defined by 21 U.S.C. 802), including any drug trafficking crimes as defined in 18 U.S.C. 924(c)(2)" and applies to federal or state offenses. *See Restrepo–Aguilar,* 74 F.3d at 365 (citing ¶ 7 of the Application Notes to § 2L1.2 from 1995) (that paragraph has been removed from the current edition). *See also Rodriguez,* 26 F.3d at 6; *United States v. Forbes,* 16 F.3d 1294, 1301 (1st Cir.1994).

A "drug trafficking offense" is defined by federal statute to include any felony punishable under the Controlled Substance Act (the "CSA") or two other statutes. *See* 18 U.S.C. 924(c)(2). *See also Forbes,* 16 F.3d at 1301.

From this definition, courts have held that for a drug offense to be a "drug trafficking offense," it must meet two criteria:

1) that it be punishable under one of the three statutes

2) that it be a felony.

*See Forbes,* 16 F.3d at 1301. *See also United States v. Pornes–Garcia,* 171 F.3d 142, 145 (2d Cir.1999); *United States v. Simon,* 168 F.3d 1271, 1272 (11th Cir. 1999); *United States v. Garcia–Olmedo,* 112 F.3d 399, 400–01 (9th Cir.1997); *United States v. Haggerty,* 85 F.3d 403, 406 (8th Cir.1996).

Possession of marijuana is a punishable offense under the CSA. *See* 21 U.S.C. § 844(a).

#### B. *Pith Of The Case: Was Gomez–Ortiz Convicted Of A Felony?*

The pith of this case is whether the conviction was a felony. The CSA defines a felony at 21 U.S.C. § 802(13): "The term 'felony' means any Federal or State offense classified by applicable Federal or State law as a felony." *See Garcia–Olmedo,* 112 F.3d at 401 (citing this section in a similar circumstance).

Because § 802(13) uses two "or"s in one sentence, the parties press two linguistically-feasible readings of "applicable." The "applicable Federal or State law" could mean the law that defined the actual of-

---

1. This was actually Gomez–Ortiz's second deportation. He had been deported for the first time on July 9, 1988. That first deportation is immaterial to this analysis.

fense of conviction or any law that might apply to defendant's conduct.

The dispute is whether federal law looks to the conduct that the defendant committed or to the law that the defendant broke. States and the federal government often-times define crimes differently. As discussed in the cases collected above, a first conviction for marijuana possession is a misdemeanor under federal law, but a felony in many states. In this case, possession with intent to distribute is a misdemeanor in Massachusetts but a felony under the CSA.

Gomez–Ortiz argues that the federal definition of "felony" looks to the law that the defendant violated. He wants § 802(13) to be read as a single test: any offense classified as a felony by the law applied in the prosecution of that offense.

The United States argues that the federal definition looks to the criminal conduct. It wants § 802(13) to be read as a two-part test: 1) any offense whether federal or state that 2) could have been prosecuted as a felony under any federal or state law.

## C. *The First Circuit Looks To The State's Characterization*

In deciding how to rule, this Court looks to how the First Circuit deals with the opposite situation—where a defendant was prosecuted under a state law that was harsher than the parallel federal law. Every circuit to address this issue, including the First Circuit, has found that the state's characterization controls. Where a defendant was prosecuted under a state law that classified his conduct as a felony, that conviction was a felony even if the conduct would have only been a misdemeanor under federal law. *See Cuevas,* 75 F.3d at 783–84 (1st Cir.1996); *Restrepo–Aguilar,* 74 F.3d at 363–67 (same). *See also Pornes–Garcia,* 171 F.3d at 145–48; *Simon,* 168 F.3d at 1272; *United States v.*

*Hinojosa–Lopez,* 130 F.3d 691, 693–94 (5th Cir.1997).

The First Circuit was clear that the Sentencing Guidelines equate a criminal record with the actual convictions. The Circuit looks to the law under which the defendant was convicted, rather than to the defendant's criminal conduct. *See Cuevas,* 75 F.3d at 783–84; *Restrepo–Aguilar,* 74 F.3d at 365.

■ The Guidelines offer comity to the states and respect their classification of a felony, even if the federal counterpart statute disagrees. *See Restrepo–Aguilar,* 74 F.3d at 365–66. The Guidelines place state law "on a par" with federal law as to criminal history. *See id.* at 365. The First Circuit held that Congress recognizes that there would be disparities between states. *See id.* at 366. The panel said:

> "The Sentencing Commission fully recognized that the seriousness of any particular state offense in a defendant's record might be viewed differently across jurisdictional lines. To the objection that the result reached today could mean variations in federal criminal sentences for illegal aliens based on whether the 50 states classify offenses as felonies or not, the response is that any such lack of uniformity is the consequence of a deliberate policy choice by Congress and the Commission that we cannot disregard."

*Id.*

The Second, Fifth and Eleventh Circuits share the First Circuit's deference to state law and sovereignty. They look to state law—that defines an offense as a felony—rather than the conduct, which would be a misdemeanor under the CSA. *See Pornes–Garcia,* 171 F.3d at 145–46; *Simon,* 168 F.3d at 1272; *Hinojosa–Lopez,* 130 F.3d at 693–94.[2]

---

**2.** *But see* the Eighth Circuit that ducked the issue by looking to *both* law and conduct, holding alternatively that conviction was a felony under state law and also would have

been a felony under federal law. *See United States v. Haggerty,* 85 F.3d 403, 406–07 (8th Cir.1996).

## CONCLUSION

■ For the preceding reasons, this Court holds that Gomez–Ortiz was not convicted of a "felony" as defined by federal law when he was convicted in Massachusetts. Therefore, he was not convicted of a "drug trafficking offense," and thus, he was not convicted of an aggravated felony. Consequently, the base offense level for the unlawful reentry is 8 points.

Although this decision is based only on a reading of the federal statutes, the result is bolstered by the fact that the government's alternative reading of § 802(13) would force district courts to imagine hypothetical prosecutions. Judges would be forced to decide what laws—either federal or in any of the several states—might be applied to the defendant's conduct. That would be unworkable and would ignore the significance of convictions.

To apply the government's definition of "felony" consistently, the sentencing court would have to examine every misdemeanor conviction to decide whether *any other sovereign* could have applied a felony statute to the defendant's conduct. Thus, a defendant who had been convicted of a federal misdemeanor would incur the extra 16 points if any state could have classified the conduct as a felony. As the cases cited above suggest, this could occur in many states, including Rhode Island.

In fact, *multiple states* can apply their laws on many drug defendants, especially those involved in transporting drugs. So a court might have to decide, for example, whether a defendant, convicted of a misdemeanor years earlier, could have been prosecuted as a felon by the federal government or by one or more states.

Not only is this unwieldy, but it ignores the gravity of actual convictions. A conviction is a serious event, and sovereigns separate offenders into those guilty of felonies and misdemeanors. The United States' reading of § 802(13) would force the sentencing court to reconsider the facts of a defendant's conviction and attempt to equate that hypothetical analysis with an actual conviction. Even in the sentencing arena where the court has wide discretion, that would be an unacceptable procedure.

Therefore, in this case, the total offense level is 6 considering that the defendant receives 2 points for acceptance of responsibility. With a criminal history category of II, the guideline range is 1 to 7 months. The sentence imposed is 7 months in prison followed by three years of supervised release with the deportation condition.

It is so Ordered.